William J. Becker, Jr., Esq. (SBN: 134545)
Bill@FreedomXLaw.com
Jeremiah D. Graham, Esq. (SBN: 313206)
jeremiahdgraham@gmail.com
**FREEDOM X**
11500 Olympic Blvd., Suite 400
Los Angeles, California 90064
Telephone: (310) 636-1018
Facsímile: (310) 765-6328

Harmeet K. Dhillon, Esq. (SBN: 207873)
harmeet@dhillonlaw.com
Mark P. Meuser, Esq. (SBN 231335)
mmeuser@dhillonlaw.com
**DHILLON LAW GROUP INC.**
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

Attorneys for Plaintiff, *Abiding Place Ministries*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ABIDING PLACE MINISTRIES**, a Church,<br><br>Plaintiff<br><br>vs.<br><br>**GAVIN NEWSOM**, in his official capacity as the Governor of California; **et al.**<br><br>Defendants. | Case No.: 3:20-cv-00683-BAS-AHG<br><br>Hon. Cynthia A. Bashant<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   June 1, 2020<br>Time:  No Oral Argument Unless Requested By The Court<br>Dept:   4B<br>Judge:  Hon. Cynthia A Bashant |

1

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiff Abiding Place Ministries, by and through counsel, will and hereby does apply to this Court pursuant to F.R.Civ.P. Rule 65 for a preliminary injunction order against Defendants Gavin Newsom, Xavier Becerra, Sonia Y. Angell and the County of San Diego as follows:

Defendants, as well as their agents, employees, and successors in office, shall be restrained and enjoined from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with any prohibition on Plaintiff's engagement in religious services, practices, or activities at which the Center for Disease Control's social distancing guidelines are followed.

This Motion is made on the grounds that Plaintiff is likely to succeed on the merits of this case, they will suffer irreparable harm without injunctive relief, the balance of equities tips sharply in their favor, and the relief sought is in the public interest.

Good cause exists to issue the requested Order to preserve Plaintiff's rights under the Constitution of the United States and the Constitution of the State of California, and to avoid irreparable harm to those rights. This Motion is supported by the accompanying Memorandum of Points and Authorities, by Plaintiff's Verified Complaint, and all exhibits attached thereto, by the declarations of Plaintiff and its counsel, Jeremiah D. Graham, and all exhibits attached thereto, and by such further argument and evidence that may be adduced at any hearing on this matter or of which the Court may take judicial notice.

/ / /

/ / /

/ / /

2

Pl.'s Mot. For Prelim. Inj.                                   Case No.: 3:20-cv-00683-BAS-AHG

1       The Verified Complaint in this action was filed on April 9, 2020; an ex parte

2   motion for Temporary Restraining Order was heard on April 10, 2020, and denied.

3   The Verified First Amended Complaint was filed on April 27, 2020.

4   DATE: May 1, 2020          Respectfully submitted,

5                            FREEDOM X

6                            *s/ William J. Becker, Jr.*

7                            Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FREEDOM X
1150 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

Pl.'s Mot. For Prelim. Inj.                    Case No.: 3:20-cv-00683-BAS-AHG

# TABLE OF CONTENTS

INTRODUCTION .................................................................................... 1

LEGAL STANDARD .............................................................................. 3

ARGUMENT............................................................................................ 3

I.    PLAINTIFFS ARE ENTITLED TO PRELIMINARY
      INJUNCTIVE RELIEF .................................................................... 3

      A.   There Is a Strong Likelihood Plaintiff Will Succeed in Proving Its
           Claims on Multiple Constitutional Grounds. ............................... 4

           1.   Defendants' Ban On Communal Religious Worship Violates
                The First Amendment's Free Exercise Clause And California
                Constitution Article 1, Section 4 ........................................... 4

           2.   The Orders Violate the Establishment Clause of the First
                Amendment ............................................................................ 7

           3.   The Orders Violate The Free Speech Clause............................ 9

           4.   The Orders Ban All Public and Private Assembly in Violation
                of the First Amendment to the U.S. Constitution and California
                Constitution ......................................................................... 11

           5.   Defendants' Orders Are Void for Reasons of Vagueness. ................. 13

           6.   The Orders Violate Plaintiff's Substantive Due Process Rights
                Under the Fourteenth Amendment. ....................................... 15

           7.   The Orders Violate Article 1, Section 1 of the California
                Constitution. ....................................................................... 16

           8.   Defendants Violate the Equal Protection Clause of the Fourteenth
                Amendment .......................................................................... 18

      B.   Plaintiffs Have Been And Will Continue To Suffer Irreparable Harm
           Absent Immediate Injunctive Relief ........................................ 19

      C.   The Balance of Hardships Tips Decidedly in Plaintiff's Favor. .............. 20

      D.   Injunctive Relief Is in the Public Interest................................. 22

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

II. THE COURT SHOULD DISPENSE WITH ANY BOND
   REQUIREMENT ........................................... 22

CONCLUSION ................................................. 23

**Pl.'s Mot. For Prelim. Inj.**                    Case No.: 3:20-cv-00683-BAS-AHG

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. United States*
509 U.S. 544 (1993) ..................................................................................... 10

*Alliance for the Wild Rockies v. Cottrell*
632 F.3d 1127 (9th Cir. 2011) ......................................................................... 3

*Am. Legion v. Am. Humanist Ass'n*
139 S. Ct. 2067 (2019) ................................................................................... 9

*Americans for Prosperity Foundation v. Harris*
182 F. Supp. 3d 1049 (C.D. Cal. 2016) ..................................................... 20, 22

*Aptheker v. Secretary of State*
378 U.S. 500 (1964) ..................................................................................... 16

*Ashcroft v. ACLU*
535 U.S. 564 (2002) ..................................................................................... 12

*Bible Club v. Placentia-Yorba Linda School Dist.*
573 F. Supp. 2d 1291, fn. 6 (C.D. Cal. 2008) ................................................. 23

*Cantwell v. Connecticut*
310 U.S. 296 (1940) ....................................................................................... 4

*Catholic Charities of Sacramento, Inc. v. Superior Court*
32 Cal. 4th 527 (2004) ................................................................................ 4, 5

*Church of the Lukumi Babalu Aye, Inc. v. Hialeah*
508 U.S. 520 (1993) .................................................................................... 5, 6

*City of Cleburne, Tex. v. Cleburne Living Ctr.*
473 U.S. 432 (1985) ..................................................................................... 18

*Connally v. General Const. Co.*
269 U.S. 385 (1926) ..................................................................................... 13

*Costco Companies, Inc. v. Gallant*
96 Cal. App. 4th 740 (Cal. App. 4th Dist. 2002) ............................................. 13

*De Jonge v. Oregon*
299 U.S. 353 (1937) ................................................................................ 12, 13

iii

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

*Dennis v. Higgins*
    498 U.S. 439 (1991) ............................................................................... 4

*Doctor John's, Inc. v. Sioux City*
    305 F. Supp. 2d 1022 (N.D. Iowa 2004) ............................................ 23

*Doe v. Harris*
    772 F.3d 563, 583 (9th Cir. 2014) ........................................ 20, 21, 22

*Duncan v. Louisiana*
    391 U.S. 145 ...................................................................................... 15

*Dunn v. Blumstein*
    405 U.S. 330 (1972) ........................................................................... 12

*Eisenstadt v. Baird*
    405 U.S. 438  (1972) .......................................................................... 15

*Empl. Div., Dept. of Human Resources of Oregon v. Smith*
    494 U.S. 872 (1990) ........................................................................... 11

*Epperson v. Arkansas*
    393 U.S. 97 (1968) ............................................................................... 7

*Everson v. Board of Ed. of Ewing*
    330 U.S. 1 26 (1947) ............................................................................ 8

*Ex parte Arta*
    52 Cal. App. 380 (1921) ..................................................................... 18

*Ex parte Martin*
    83 Cal. App. 2d 164  (1948) ............................................................... 17

*Fantasyland Video, Inc. v. Cty. of San Diego*
    496 F.3d 1040 (9th Cir. 2007) .............................................................. 9

*For Survival v. City of Los Angeles*
    22 Cal. 4th 352, n.12 (2000) ................................................................ 9

*Grayned v. City of Rockford*
    408 U.S. 104 (1972) ........................................................................... 14

*Griswold v. Connecticut*
    381 U.S. 479 (1965) ...................................................................... 12, 15

iv

*Houston v. Hill*
   482 U.S. 451 (1987) ................................................................................. 10

*IDK, Inc. v. Clark Cnty.*
   836 F.2d 1185 (9th Cir. 1988) ............................................................. 9, 10

*In re Abbott*
   954 F.3d 772 (5th Cir. 2020) ................................................................... 6

*In re J.M.*
   36 Cal. App. 5th 668 (2019) ..................................................................... 9

*Jew Ho v. Williamson*
   103 F. 10 (C.C. Cal. 1900) ...................................................................... 17

*Jorgensen v. Cassiday*
   320 F.3d 906 (9th Cir. 2003) .................................................................. 22

*Kent v. Dulles*
   357 U.S. 116 (1958) ................................................................................. 16

*Ketchum v. Alameda Cnty.*
   811 F.2d 1243 (9th Cir. 1987) .................................................................. 4

*Lawrence v. Texas*
   539 U.S. 558 (2003) ................................................................................. 12

*Lee v. Weisman*
   505 U.S. 577 (1992) ................................................................................... 7

*Lemon v. Kurtzman*
   403 U. S. 602 (1971) .................................................................................. 8

*Lovell v. City of Griffin*
   303 U.S. 444 (1938) ................................................................................... 9

*Maher v. Roe*
   432 U.S. 13 464 (1977) ............................................................................ 16

*Maynard v. U.S. Dist. Court for the Cent. Dist. of California*
   701 F. Supp. 738 (C.D. Cal. 1988) ........................................................ 19

*McCreary Cnty., Ky. v. Am. Civil Liberties Union of Ky.*
   545 U.S. 844 (2005) ................................................................................... 7

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

*Memorial Hospital v. Maricopa Cnty.*
  415 U.S. 250 (1974) ........................................................................ 16, 19

*Monell v. Dept. of Soc. Servs.*
  436 U.S. 658 (1978) .............................................................................. 4

*Moore v. City of East Cleveland*
  431 U.S. 494 (1977) ............................................................................ 12

*Natl. Ass'n for Advancement of Colored People v. Alabama ex rel. Flowers*
  377 U.S. 288 (1964) ............................................................................ 12

*On Fire Christian Ctr., Inc. v. Fischer*
  3:20-CV-264-JRW, 2020 WL 1820249 (W.D. Ky. Apr. 11, 2020) ................... 6

*People ex rel. Gallo v. Acuna*
  14 Cal.4th 1090 (1997) ....................................................................... 13

*People v. Chambers*
  22 Cal. App 2d 687 (1937) .................................................................. 12

*Reed v. Town of Gilbert*
  576 U.S. 155 (2015) .............................................................................. 9

*Sammartano v. First Jud. Dist. Ct.*
  303 F.3d 959 (9th Cir. 2002) ........................................................... 19, 22

*San Antonio Indep. Sch. Dist. v. Rodriguez*
  411 U.S. 1 (1973) ............................................................................... 12

*Sessions v. Dimaya*
  138 S. Ct. 1204 (2018) ........................................................................ 14

*Shapiro v. Thompson*
  394 U.S. 618 (1969) ............................................................................ 16

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009)).

*Stormans, Inc. v. Wiesman*
  794 F.3d 1064 (9th Cir. 2015) ............................................................... 5

*Thomas v. Review Bd. of Indiana Emp. Sec. Div.*
  450 U.S. 707 (1981) .............................................................................. 6

vi

FREEDOM X
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

*V.A. v. San Pasqual Valley Unified Sch. Dist.*
  17-CV-02471-BAS-AGS, 2017 WL 6541447 (S.D. Cal. Dec. 21, 2017) ......... 20

*Whitney v. California*
  274 U.S. 357 (1927) ....................................................................... 11

*Widmar v. Vincent*
  454 U.S. 263 (1981) ................................................................... 9, 10

*Wilson v. Superior Court*
  13 Cal.3d 652 (1975) ...................................................................... 9

*Winter v. Natural Res. Def. Council, Inc.*
  555 U.S. 7 (2008) ........................................................................... 3

*Wisconsin v. Yoder*
  406 U.S. 205 (1972) ...................................................................... 12

*Wong Wai v. Williamson*
  103 F. 1 (C.C. Cal. 1900) .............................................................. 17

**Statutes**

42 U.S.C. § 1983 ........................................................................... 4, 9

**Constitutional Provisions**

Cal. Const., art. I, § 1 ..................................................................... 16

Cal. Const., art. I, § 2 ..................................................................... 10

Cal. Const. art. 1, § 3 ..................................................................... 12

Cal. Const., art. I, § 4 ....................................................................... 5

U. S. Const. amend. I ................................................................... 4, 10

U.S. Const. amend. XIV, § 1 ........................................................... 18

## MEMORANDUM OF POINTS AND AUTHORITIES

**[E]ven in times of emergency, when reasonable and temporary restrictions are placed on rights, the First Amendment and federal statutory law prohibit discrimination against religious institutions and religious believers**.

\* \* \*

Many policies that would be unthinkable in regular times have become commonplace in recent weeks, and we do not want to unduly interfere with the important efforts of state and local officials to protect the public. **But the Constitution is not suspended in times of crisis**.

U.S. Attorney General Bill Barr, "Balancing Public Safety with the Preservation of Civil Rights," issued April 27, 2020. (Emphasis added.)

## INTRODUCTION

Abiding Place Ministries, a small church (the "Church") seeking to privately assemble away from the general public in the open air on a large, private ranch were targeted for enforcement by San Diego County Officials, and told that if they had any assembly on Easter or during the weeks following, no matter how they arranged the service, or what precautions they took, the Church and its members would be punished. FAC ¶¶ 25-45. The Church has sincerely held religious beliefs that they were commanded by God to assemble, and that He would be in the midst of their assembly. Decl. Spitsbergen. The County informed the Church that their services were not necessary or essential and that their beliefs were not the preferred beliefs of the County. FAC ¶¶ 32, 35-36. After the Church made proposals to the County for arranging their service in various ways that complied with the County's then-existing orders, the County changed their order to prohibit all public or private gatherings, which were defined as "any event or convening that brings together more than one person." FAC ¶¶ 31-34. After changing their order, the County reached out to the Church and informed them that they would continue to be targeted for enforcement if they assembled. FAC ¶¶ 33-34.

1

FREEDOM X
11500 OLYMPIC BLVD. SUITE 400
LOS ANGELES, CA 90064

In their opposition to Plaintiff's Motion for TRO, the County alleged that Plaintiff had violated State and Local Stay-at-Home Orders. This is false. On March 29, 2020, the Church was complying with the orders as they understood them at the time, and even the representative of the County who came to that service to enforce the "Governor's Order" indicated that he "was not current on the actual law that prohibits their right to congregate with more than 10 people." Decl. Graham ¶ 14-17; Dkt. No. 6-3 (TRO Opp. Decl. Uelen, Exh. 1).  After meeting with County Officials, and working to find a solution that would allow them to assemble safely, on April 5, 2020, the Church made every effort to comply with the then-existing order, and its agreements with the County, holding a drive-in service. Decl. Graham ¶¶ 18-33. The only members of the Church who had any contact with one another outside vehicles were essential staff, who had specific duties and were specifically exempted by the Order and the County's interpretation of the Order. *Id.*

Despite declarations of national, state, and local emergencies surrounding the coronavirus outbreak, Defendants have decided to allow "essential" businesses (as determined by Defendants on an ad hoc basis) to continue operations. For example, Defendants permit gun stores, marijuana dispensaries, fast food restaurants, and laundromats to continue operations, subject to certain social distancing guidelines. Churches and religious services, however, have not made Defendants' cut. Instead, Defendants insist that all religious worship take place only at home, by live-streaming, apparently assuming that all churches have access to the equipment necessary to produce such live-streaming services and that Californians have access to high-speed internet, computer equipment, a desire to add intrusive, data-collecting apps to their computer devices, and the willingness to suspend a lifetime of worship practices at the command of the government. The United States and California Constitutions simply do not tolerate such arbitrary and discriminatory restrictions thrust upon fundamental rights while less restrictive measures are available and are being allowed for entities the Government deems "essential."

FREEDOM
11500 OLYMPIC BLVD. SUITE 400
LOS ANGELES, CA 90064

Plaintiff thus moves for a preliminary injunction to enjoin the County and all persons acting at the County's direction from applying the County's Order of the Health Officer and Emergency Regulations (Effective April 9, 2020) against Abiding Place Ministries. This Court should immediately enjoin Defendants from further violating Plaintiff's religious liberty by ascribing second-class status to faith practices.

## LEGAL STANDARD

To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that a balance of the equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A plaintiff must satisfy each of the *Winter* factors to obtain preliminary injunctive relief. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). However, "serious questions going to the merits and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* (quotation marks omitted).

## ARGUMENT

## I.    PLAINTIFFS ARE ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF

Plaintiff is entitled to a preliminary injunction in this case. It can demonstrate a likelihood of success on the merits of its claims in light of settled legal and constitutional standards applicable to the circumstances here. Additionally, Plaintiff can show that the balance of equities tips in its favor because Defendants are in a position to adopt, at least in an interim basis a more narrowly crafted set of provisions that enable the defendants to achieve their legitimate ends without

unjustifiably invading First Amendment freedoms.  The conjectural harm to the public caused by Plaintiff's congregants gathering for worship in their vehicles is scientifically, medically and empirically unestablished, and such gatherings do nothing to undermine efforts to protect the health of the public because they conform to social distancing guidelines. Plaintiff's motion should be granted.

### A.     There Is A Strong Likelihood Plaintiff Will Succeed In Proving Its Claims On Multiple Constitutional Grounds

#### 1.     Defendants' Ban On Communal Religious Worship Violates The First Amendment's Free Exercise Clause And California Constitution Article 1, Section 4

Plaintiff's first and eleventh claims for relief assert facial and as-applied challenges pursuant to (1) 42 U.S.C. Section 1983 on the grounds that Defendants' Orders violate the Free Exercise Clause of the First Amendment to the U.S. Constitution, and (2) state law on the grounds that the Orders violate Article 1, Section 4 of the California Constitution. *See Catholic Charities of Sacramento, Inc. v. Superior Court*, 32 Cal. 4th 527, 562 (2004) (implicitly recognizing state law claim for violations of Art. 1, Section 4 of the California Constitution); *Ketchum v. Alameda Cnty.*, 811 F.2d 1243, 1245 (9th Cir. 1987) (a cause of action arises under Section 1983 where "(1) the conduct that harm[ed] [Plaintiffs] [was] committed under color of  state law (i.e. state action), and (2) the conduct . . . deprive[d] [Plaintiffs] of a constitutional right."); *Dennis v. Higgins*, 498 U.S. 439 (1991) (The rights guaranteed by Section 1983 are to be "liberally and beneficently construed.") (quoting *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 684 (1978)).

The First Amendment to the U.S. Constitution prohibits government actors from enforcing any "law respecting an establishment of religion, or prohibiting the free exercise thereof." U. S. Const. amend. I; *see also Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (applying the First Amendment to the States through the Fourteenth Amendment). The California Constitution similarly protects the "[f]ree

exercise and enjoyment of religion without discrimination or preference." Cal. Const., art. I, § 4 *see also Catholic Charities of Sacramento, Inc.,* 32 Cal. 4th at 562.

As the Supreme Court has noted, "a law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993). "A law is not generally applicable if its prohibitions substantially underinclude non-religiously motivated conduct that might endanger the same governmental interest that the law is designed to protect." *Stormans, Inc. v. Wiesman,* 794 F.3d 1064, 1079 (9th Cir. 2015) (citing *Lukumi*, 508 U.S. at 542–46. "In other words, if a law pursues the government's interest 'only against conduct motivated by religious belief,' but fails to include in its prohibitions substantial, comparable secular conduct that would similarly threaten the government's interest, then the law is not generally applicable." *Id.*

The Orders are neither neutral nor of general application. Defendants' restrictions have specifically and explicitly targeted religious and "faith-based" services and are thus not neutral on their face. FAC, Exhs. D & E. Defendants have prohibited certain public and private gatherings deemed "non-essential," including out-of-home religious services, while exempting a laundry list of industries and services purportedly "essential" to the government's various interests, including the entertainment industry—which includes the pornography film industry—gun stores, cannabis dispensaries, courts, public utilities, daycare and childcare, and "necessary" shopping. By restricting churches to engaging in worship services only through "streaming or other technology," the Orders substantially burdens Abiding Place Ministries' sincerely held religious beliefs in a manner that is not "neutral" between religious and non-religious conduct. Orders and threats of fines and arrest applied to churches are not "generally applicable" to both religious and non-religious conduct. *See Lukumi*, 508 U.S. at 531. "The principle that government, in pursuit of legitimate interests, cannot in a selective manner impose burdens only on

5

conduct motivated by religious belief is essential to the protection of the rights guaranteed by the Free Exercise Clause." *Id.* at 543.

To be sure, the Governor and the County are pursuing a compelling interest of the highest order through its efforts to contain the current pandemic. But their actions violate the Free Exercise Clause "beyond all question" (*In re Abbott*, 954 F.3d 772, 784 (5th Cir. 2020)) because they are not even close to being "narrowly tailored to advance that interest" (*Lukumi* at 531-32). As in *Lukumi*, the government's "proffered objectives are not pursued with respect to analogous non-religious conduct, and those interests could be achieved by narrower ordinances that burdened religion to a far lesser degree." *Id.* at 546; *see also On Fire Christian Ctr., Inc. v. Fischer*, 3:20-CV-264-JRW, 2020 WL 1820249, at *7 (W.D. Ky. Apr. 11, 2020).

In other words, the County's actions are "underinclusive" and "overbroad." *Id*. They're underinclusive because they do not prohibit a host of equally dangerous (or equally harmless) activities that the Governor/County have permitted on the basis that they are "essential." FAC, Exhs. A through E. The County engages in the fallacious act of *assuming* it knows what constitutes valid forms of worship. It assumes, for instance, that Abiding Place Ministries' members could participate in an online service and thus satisfy their longing for communal celebration. The County itself promotes this form of worship. FAC ¶¶ 35 and 36. But some members may not have access to online resources. And even if they all did, the Free Exercise Clause protects their right to worship as their conscience commands them. It is not the role of a court to tell religious believers what is and is not important to their religion, so long as their belief in the religious importance is sincere. The Free Exercise clause protects sincerely held religious beliefs that are at times not "acceptable, logical, consistent, or comprehensible to others." *Lukumi* at 508 U.S. at 531 (quoting *Thomas v. Review Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 714 (1981)).

Religion is not "some purely personal avocation that can be indulged entirely in secret, like pornography, in the privacy of one's room. For most believers, it is not that, and has never been." *Lee v. Weisman*, 505 U.S. 577, 645 (1992) (Scalia, J., dissenting). Instead, just as many religions reinforce their faith and their bonds with the faithful through religious assemblies, many Christians take comfort and draw strength from Christ's promise that "where two or three are gathered together in My name, there am I in the midst of them." Matthew 18:20. Indeed, the Greek word translated "church" in the Bible is "ekklesia," which literally means "assembly." For the Plaintiff, Church can never be about a simple sermon delivered by one man to a passive audience. It is a time when all members must participate together: "When you come together, **every one of you** has a psalm, a teaching, a tongue, a revelation, and an interpretation. Let all things be done for edification." 1 Corinthians 14:26 (emphasis added). And, the Bible specifically enjoins failure to gather, stating: "Let us not forsake the **assembling of ourselves together** …." Hebrews 10:25 (emphasis added).

Because narrower restrictions may be applied to Plaintiff, while still protecting legitimate governmental interests, the Orders are unconstitutional and Defendants should be enjoined. Furthermore, the Orders do not have any rational basis because the members of the Church are not infected with the coronavirus.

### 2. The Orders Violate The Establishment Clause Of The First Amendment

The Orders and Defendants' enforcement thereof violate the First Amendment, both facially and as-applied to Plaintiffs. The Establishment Clause of the "First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion." *McCreary Cnty., Ky. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 860 (2005) (citing *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)). The Establishment Clause applies to the states through the

7

Due Process Clause of the Fourteenth Amendment. *Everson v. Board of Ed. of Ewing*, 330 U.S. 1 26 (1947).

Under the *Lemon* test, the courts ask whether the government action (1) has a clear secular purpose; (2) has a "principal or primary effect" that "neither advances nor inhibits religion"; and (3) does not foster "an excessive government entanglement with religion." *Lemon v. Kurtzman*, 403 U. S. 602 (1971); *but see Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067 (2019)  (writing for the plurality, Justice Samuel Alito refused to apply the *Lemon* test to a religious-display case, but failed to garner majority support for any other test).

Defendants have not and do not act with a clearly secular purpose in adopting and enforcing the Orders. The Orders are ambiguous in scope and application, granting law enforcement unfettered discretion in deciding what conduct shall constitute a crime, and what conduct is "essential," and therefore permissible. This discretion has already been exercised by government officials to temporarily exempt churches, including Abiding Place Ministries, from compliance with the Orders the weekend prior to Easter. It is not for Defendants to determine on which days religious services may take place. The Orders and Defendants' ad hoc enforcement thereof have the primary effect of inhibiting religious activity. Indeed, the Orders expressly prohibit religious services unless practiced within the home, by live-streaming. As a result, Defendants have also failed to avoid excessive government entanglement with religion.

Defendants permit only some forms of religious observance (currently "drive-in" services), while disallowing all communal worship. Furthermore, they have participated in promoting favored forms of worship. FAC ¶¶ 35-36. Thus, the Court should grant this Application and enjoin further enforcement of the Orders.

/ / /

/ / /

8

FREEDOM X
11500 OLYMPIC BLVD. SUITE 400
LOS ANGELES, CA 90064

### 3. The Orders Violate The Free Speech Clause

As Plaintiff's third and ninth claims for relief, it asserts facial and as-applied challenges pursuant to (1) 42 U.S.C. Section 1983 on the grounds that Defendants' Orders violate the Free Speech Clause of the First Amendment to the U.S. Constitution, and (2) state law on the grounds that the Orders violate Article 1, Section 2 of the California Constitution. "[T]he California liberty of speech clause is broader and more protective than the free speech clause of the First Amendment." *Fantasyland Video, Inc. v. Cty. of San Diego*, 496 F.3d 1040, 1042 (9th Cir. 2007). However, in some areas, the protection afforded by the California liberty of speech clause is coterminous with that provided by the federal Constitution. Los Angeles All. *For Survival v. City of Los Angeles*, 22 Cal. 4th 352, 367, n.12 (2000). California courts treat the prior restraint and overbreadth doctrine similarly to federal courts. *See Wilson v. Superior Court*, 13 Cal.3d 652, 658-62 (1975) (relying mostly on federal citations to analyze prior restraint doctrine under California Constitution); *In re J.M.*, 36 Cal. App. 5th 668, 680 (2019) (citing some federal cases and paralleling overbreadth doctrine analysis under California Constitution with that under the U.S. Constitution).

Religious speech is protected under the First Amendment. *See, e.g., Widmar v. Vincent*, 454 U.S. 263, 269 (1981); *Lovell v. City of Griffin*, 303 U.S. 444 (1938). And the government may not restrict private speech on private property, religious or otherwise, without satisfying strict scrutiny. *Reed v. Town of Gilbert*, 576 U.S. 155 (2015) (town's sign ordinance restricting speech "on private property or on a public right of way" subject to strict scrutiny).

The Orders—by acting as a prior restraint to protected speech—are unconstitutional facially and as-applied because they impermissibly burden Plaintiff's right to freedom of speech under the First Amendment and California Constitution, art. 1, § 2. *See IDK, Inc. v. Clark Cnty.*, 836 F.2d 1185, 1191 (9th Cir. 1988) (stating that a law is facially unconstitutional if it impermissibly burdens the

FREEDOM X
11500 OLYMPIC BLVD. SUITE 400
LOS ANGELES, CA 90064

plaintiff's rights, such as in the case of a prior restraint); U.S. Const., amend. I; Cal. Const., art. I, § 2. The term prior restraint is used "to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (citation omitted).

Here, the Orders categorically ban Abiding Place Ministries' members from gathering at their place of worship for the foreseeable future <u>even if they comply with all federal, state and local mitigation guidelines</u>. Accordingly, the Orders are facially unconstitutional because they act as a prior restraint to protected speech: religious services.

The Orders are also facially unconstitutional on the separate basis that they are substantially overbroad. *See IDK, Inc.*, 836 F.2d at 1191 (stating that a law is facially unconstitutional if it impermissibly burdens the rights of third parties, such as in the case of an unconstitutionally overbroad law). "Substantial overbreadth" is shown not where one shows that he can conceive of some impermissible applications of the order, but where one can show a significant number of situations where an order could be applied to prohibit constitutionally protected speech. *Houston v. Hill*, 482 U.S. 451 (1987) (ordinance--outlawing interruption of police officers while carrying out their duties--was unconstitutionally overbroad because it criminalized substantial amount of constitutionally protected speech and allowed police unfettered discretion in enforcement of the ordinance).

Here, the purpose of the Orders is to slow the transmission rate of the COVID- 19 pandemic in California and its counties. However, it eliminates all in-person, religious meetings, a form of protected speech (*Widmar*, 454 U.S. at 269, n.6), despite the fact that alternatives, such as those the Church proposed to the County, would allow such religious speech without risking transmission. This is a substantial burden because it covers the protected speech that every Californian who attends religious services regularly usually would enjoy. Furthermore, violators of

10

FREEDOM
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

the Orders are liable for criminal penalties. FAC, ¶¶ 34, 50, 74, 95-97 Exhs. B, ¶ 25 & H, p. 2.

Courts apply strict scrutiny where the government exempts non-religious entities from the burdens associated with government action but withholds such exemptions from religious entities. The Orders operate as a wholesale prohibition against assembling for religious services. Thus, they sweep far beyond the "incidental effect" on religious activity excused in *Empl. Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 874 (1990). *See also Lukumi* at 531 (noting *Smith's* application to incidental burdening of particular religious practices). And the Court, writing in *Smith*, contemplated application of strict scrutiny whenever religious freedom was implicated alongside any other protected right, even when considering a neutral law of general applicability. *Id*. at 872-873 ("The only decisions in which this Court has held that the First Amendment bars application of a neutral, generally applicable law to religiously motivated action are distinguished on the ground that they involved not the Free Exercise Clause alone, but that clause in conjunction with other constitutional protections." (Internal citations omitted).

Because the Church's services consist entirely of protected expression and speech, such as praise and worship and religious preaching and teaching, the Orders restrict speech and trigger strict scrutiny. And because the Orders criminalize a substantial amount of protected speech that is unnecessary for their underlying purpose, and provide law enforcement officers no guidance as to enforcement, the Orders are unconstitutionally overbroad, and this Court should grant injunctive relief.

>    **4.    The Orders Ban All Public And Private Assembly In Violation Of The First Amendment To The U.S. Constitution And California Constitution**

"The right of free speech, the right to teach, and the right of assembly are, of course, fundamental rights." *Whitney v. California*, 274 U.S. 357, 373 (1927). The

11

FREEDOM X
11500 OLYMPIC BLVD. SUITE 400
LOS ANGELES, CA 90064

First Amendment of the Constitution protects the "right of the people peaceably to assemble." The Freedom of Assembly Clause was incorporated against the states in *De Jonge v. Oregon*, 299 U.S. 353 (1937).  The California Constitution also protects the right to freely assemble. *See, e.g.*, Cal. Const. art. 1, § 3; *People v. Chambers*, 22 Cal. App 2d 687, 706 (1937) ("[L]aws should not infringe upon our guaranteed freedom of speech and lawful assembly."). When a government practice restricts fundamental rights, it is subject to "strict scrutiny" and can be justified only if it furthers a compelling government purpose and, even then, only if no less restrictive alternative is available. *See, e.g., San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16-17 17 (1973); *Dunn v. Blumstein*, 405 U.S. 330 (1972).

The Church in this case does not operate indoors or even own a structure dedicated for the use of worship services. Its members assemble on a large 427-acre ranch owned by the Church, either in the open air or under a large open-air tent. By enforcing their Orders against the Church, whose outdoor environmental setting is uniquely unlike the more common church structure setting, Defendants are also intruding upon Plaintiff's corollary right of privacy by refusing to allow its members to assemble on private property. "[A] governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *Griswold v. Connecticut*, 381 U.S. 479, 485 (1965), quoting *Natl. Ass'n for Advancement of Colored People v. Alabama ex rel. Flowers*, 377 U.S. 288, 307 (1964). The Court has long recognized a heightened protection for rights when exercised in private. *See Wisconsin v. Yoder*, 406 U.S. 205 (1972) (private education); *Moore v. City of East Cleveland*, 431 U.S. 494 (1977) (living arrangements); *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261 (1990) (right to die); *Ashcroft v. ACLU*, 535 U.S. 564 (2002) (pornography); *Lawrence v. Texas*, 539 U.S. 558 (2003) (sodomy).

/ / /

12

Here, the government is attempting to invalidly enforce a time, place and manner restriction on private property. The Supreme Court has only considered one right of assembly case implicating private property and struck down the challenged law on the grounds that it impermissibly targeted the right of assembly. *De Jonge, supra*, at 365 ("[P]eaceable assembly for lawful discussion cannot be made a crime."). State action implicating the constitutional rights of private property owners regarding property that is not "freely and openly accessible to the public" is impermissible. *See, e.g.*, *Costco Companies, Inc. v. Gallant*, 96 Cal. App. 4th 740, 748 (Cal. App. 4th Dist. 2002).

The Orders and Defendants' enforcement thereof violate the First Amendment, both facially and as-applied to Plaintiff. By denying Plaintiff the ability to conduct services that comply with the CDC guidelines for social distancing, Defendants are in violation of the Freedom of Assembly Clause. Defendants cannot meet the no-less-restrictive-alternative test. The CDC's social distancing guidelines are appropriate to limit the spread of COVID-19. Imposing more restrictive requirements that target churches while at the same time allowing people to gather together at Costco, Ralphs, Home Depot, Cloud 9 Smoke Shop, San Diego Recreational Cannabis Dispensary or at work in the entertainment industry is not the least restrictive means of achieving Defendants' public safety goals. Requiring Plaintiff to abstain from religious gatherings, despite substantial modifications to satisfy the public health interests at stake (modifications that have been deemed acceptable in the cases of operations deemed "essential" by government decree), violates Plaintiff's Constitutional right to peaceably assemble.

### 5.    Defendants' Orders Are Void for Reasons Of Vagueness.

A regulation is constitutionally void on its face when, as matter of due process, it is so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Const. Co*., 269 U.S. 385, 391 (1926); *People ex rel. Gallo v. Acuna*, 14 Cal.4th 1090, 1115 (1997).

FREEDOM X
11500 OLYMPIC BLVD. SUITE 400
LOS ANGELES, CA 90064

Vague laws "trap the innocent by not providing fair warning." *Grayned v. City of Rockford*, 408 U.S. 104, 108–109 (1972). If "arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Id*. The problem with a vague regulation is that it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis with the attendant dangers of arbitrary and discriminatory application." *Id.*; *see also Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018).

The Orders at issue in this case are so vague as to their scope and application as to run afoul of the Due Process Clause of the Fourteenth Amendment. Embedded within the Governor's Order is a public health directive to shelter in place. The Governor's Order itself merely orders the public to "heed" the public health directive, it does not appear to order compliance therewith or provide a clear and unambiguous mechanism for criminally enforcing it; Webster's Dictionary defines the word "heed" to mean "to give consideration or attention to"—not to "adhere" or comply. Despite this, state and local officials and the media have widely reported the State Order to require compliance with the public health directive by staying at home. The San Diego Orders, for example, state this. FAC, ¶ 5, 31 & 95, Exh. B, ¶¶ 1, 2, 25 & 26. ("All persons are to remain in their homes or at their place of residence, except for employees or customers travelling to and from essential businesses or activities … or to participate in individual or family outdoor activity as allowed by this Order.… Violation of this Order is subject to fine, imprisonment, or both. (California Health and Safety Code section 120295.)"). Given this ambiguity, neither Plaintiff nor any other reasonable person can understand precisely what is being ordered, and what actions may result in criminal penalties, fines, or imprisonment. As such, the State Order is void for vagueness.

The San Diego Orders and Defendants' enforcement thereof muddle the issue further. *See, e.g*., Dkt. No. 22-2, FAC, Exh. B. They incorporate the State

14

FREEDOM
11500 OLYMPIC BLVD, SUITE 400
LOS ANGELES, CA 90064

exemptions, which in turn adopt exemptions for federal critical infrastructure sectors. *Id.*, p. 3, ¶ 17(a). Among those sectors are "commercial facilities" "that draw large crowds of people for shopping, business, entertainment, or lodging … [in commercial facilities where] the general public can move freely without the deterrent of highly visible security barriers [], the majority [of which] are privately owned and operated, with minimal interaction with the federal government and other regulatory entities."[7] In other words, the path to understanding how the three jurisdictional Orders interlock leads to utter confusion. Local officials have unfettered discretion to selectively enforce the stay-at-home quarantine Orders. They have done that by exempting the "entertainment and media" industries while not exempting other "commercial facilities," such as "gaming," "outdoor events," or "public assembly."

### 6.   The Orders Violate Plaintiff's Substantive Due Process Rights Under The Fourteenth Amendment.

The Orders and Defendants' enforcement thereof violate Plaintiff's substantive due process rights secured by the Fourteenth Amendment to the U.S. Constitution. Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law." The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights. *See Duncan v. Louisiana*, 391 U.S. 145, 147–149 (1968). In addition, these liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs. *See, e.g., Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972); *Griswold v. Connecticut*, 381 at 484–486.

Plaintiff's rights to freedom of religion, assembly, speech, and travel are fundamental rights protected by the U.S. Constitution. *See, e.g., Aptheker v.*

---

[7] Department of Homeland Security, Cybersecurity and Infrastructure Security Agency; https://www.cisa.gov/commercial-facilities-sector

Pl.'s Mot. For Prelim. Inj.                                          Case No.: 3:20-cv-00683-BAS-AHG

*Secretary of State*, 378 U.S. 500, 520 (1964); *Kent v. Dulles*, 357 U.S. 116, 127 (1958). When a government practice restricts a fundamental right, as is the case here, it is subject to "strict scrutiny" and can be justified only if it furthers a compelling government purpose, and, even then, only if no less restrictive alternative is available. *See, e.g. Memorial Hospital v. Maricopa Cnty.*, 415 U.S. 250, 257-258 (1974); *Dunn*, 405 U.S. 12 at 339-341; *Shapiro v. Thompson*, 394 U.S. 618, 660 (1969); and *Maher v. Roe*, 432 U.S. 13 464, 488 (1977).

Strict scrutiny applies to Plaintiff's claims because the state and local Orders mandate that Plaintiff's members stay at home because Plaintiff's desired actions are not deemed essential, impinging on their fundamental rights to freedom of religion, assembly, speech, and travel. Defendants' mandates are not "narrowly tailored" to further any compelling governmental interest. Defendants' have granted numerous special exemptions to their bans on public gatherings, including for purportedly "essential" businesses and activities, provided that social distancing practices are observed. Since these gatherings can be permitted, there can be no doubt that Defendants may, and therefore must, permit Plaintiff to engage in equivalent constitutionally-protected activities provided that Plaintiff also adheres to the social distancing guidelines.

### 7. The Orders Violate Article 1, Section 1 Of The California Constitution.

All Californians "are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy. Cal. Const. art. 1, § 1. Understanding the basic fundamental right of liberty, California courts have held that Public Health Officials' authority is limited. Before exercising their full powers to quarantine, there must be "reasonable grounds [] to support the belief that the person so held is infected." *Ex parte Martin*, 83 Cal.

App. 2d 164  (1948). Public Health Officials must be able to show "probable cause to believe the person so held has an infectious disease …" *Id.*

In a case that is somewhat analogous to what Californians are facing with the COVID-19 pandemic, California courts found that Public Health Officials could not quarantine 12 blocks of San Francisco Chinatown because of nine deaths due to bubonic plague. *See Jew Ho v. Williamson*, 103 F. 10 (C.C. Cal. 1900); *Wong Wai v. Williamson*, 103 F. 1 (C.C. Cal. 1900). These courts found it "purely arbitrary, unreasonable, unwarranted, wrongful, and oppressive interference with the personal liberty of complainant" who had "never had or contracted said bubonic plague; that he has never been at any time exposed to the danger of contracting it, and has never been in any locality where said bubonic plague, or any germs of bacteria thereof, has or have existed." *Jew Ho*, 103 F. at 10.

In *Jew Ho and Wong Wai*, the courts found that there were more than 15,000 people living in the twelve blocks of San Francisco Chinatown who were to be quarantined. The courts found it unreasonable to shut down the ability of over 15,000 people to make a living because of nine deaths. This was one death for every 1,666 inhabitants of Chinatown. 42. According to the County's "Coronavirus Disease (COVID-19) Dashboard, the number of deaths in San Diego County as of April 29, 2020, total 118 and the number of positive cases totals 3,314.   The County's population is 3.338 million people.   The number of deaths, after approximately two months of social distancing is thus a miniscule .000035 per cent of the total population, or seven in 200,000 people, or one death for every 28,571 people. One in 28,571 is 17 times greater than one in 1,666. Also, the number of positive cases is .00099 percent of the population, or 99 in 100,000 people, or one positive case for every 1,010 people.

California courts have found that "a mere suspicion [of a contagious disease], unsupported by facts giving rise to reasonable or probable cause, will afford no justification at all for depriving persons of their liberty and subjecting them to

FREEDOM
11500 OLYMPIC BLVD. SUITE 400
LOS ANGELES, CA 90064

17

virtual imprisonment under a purported order of quarantine." *Ex parte Arta*, 52 Cal. App. 380, 383 (1921) (emphasis added). Plaintiff's members have never contracted the COVID-19 virus; they have never been at any time exposed to the danger of contracting it, and have never been in any locality where the virus is known to have infected other people. Requiring Plaintiff's members to abstain from all religious gatherings, despite substantial modifications to satisfy the public health interests at stake, violates their liberty rights under the California Constitution. And, it is especially egregious in this case, where the Plaintiff's members began taking proper actions to avoid contact with said coronavirus long before the Defendants mandated those actions. FAC, ¶¶ 18-20.

### 8.   Defendants Violate The Equal Protection Clause Of The Fourteenth Amendment

As to Plaintiff's seventh claim, the Orders and Defendants' enforcement thereof violate the Fourteenth Amendment, both facially and as applied to Plaintiffs. The Fourteenth Amendment of the Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Equal protection requires the state to govern impartially—not draw arbitrary distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objection. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985).

Defendants intentionally and arbitrarily categorize individuals and conduct as either "essential" or "non-essential." FAC ¶¶ 21-24, 29, 31-32, 49, 52, 95-96, 107-108, 117, Exhs. A through E. Those persons classified as "essential," or as participating in essential services, are permitted to go about their business and activities provided certain social distancing practices are employed. *Id*. Those classified as "nonessential," or as engaging in non-essential activities, are required to stay in their residence, unless it becomes necessary for them to leave for one of the enumerated "essential" activities. *Id*.

18

Strict scrutiny under the Equal Protection Clause applies where, as here, the classification impinges on a fundamental right, including the right to practice religion freely, the right to free speech and assembly, and the right to travel, among other rights. *Maynard v. U.S. Dist. Court for the Cent. Dist. of California*, 701 F. Supp. 738, 742 (C.D. Cal. 1988) ("When a law disadvantages a suspect class or impinges upon a 'fundamental right,' the court will examine the law by applying a strict scrutiny standard"), aff'd sub nom. *Maynard v. U.S. Dist. Court for Cent. Dist. of California*, 915 F.2d 1581 (9th Cir. 1990). Under strict scrutiny review, the law can be justified only if it furthers a compelling government purpose, and, even then, only if no less restrictive alternative is available. *See, e.g. Memorial Hospital*, 415 U.S. at 257-258.

Defendants cannot satisfy strict scrutiny; their arbitrary classifications are not narrowly tailored measures (that further a compelling government interest) because Defendants have granted numerous special exemptions to their bans on public gatherings, including for purportedly "essential" businesses and activities—provided that social distancing practices are observed. Since these gatherings can be permitted, there can be no doubt that Defendants must permit Plaintiffs to engage in equivalent constitutionally-protected activities provided that Plaintiffs also adhere to the social distancing guidelines.

## B.    Plaintiffs Have Been And Will Continue To Suffer Irreparable Harm Absent Immediate Injunctive Relief

"In a case like the one at bar, where the First Amendment is implicated, the Supreme Court has made clear that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury' for purposes of the issuance of a preliminary injunction." *College Republicans at San Francisco State University v. Reed*, 523 F. Supp. 2d 1005, 1011 (N.D. Cal. 2007) (citing *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 973-74 (9th Cir. 2002), in turn citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also S.O.C., Inc. v. Cnty.*

*of Clark*, 152 F.3d 1136, 1148 (9th Cir. 1998) (holding that a civil liberties organization that had demonstrated probable success on the merits of its First Amendment overbreadth claim had thereby also demonstrated irreparable harm). "In other words, the requirement that a party who is seeking a preliminary injunction show 'irreparable injury' is deemed fully satisfied if the party shows that, without the injunction, First Amendment freedoms would be lost, even for a short period." Reed, 523 F. Supp. 2d at 1011. "Unlike a monetary injury, violations of the First Amendment 'cannot be adequately remedied through damages.'" *Americans for Prosperity Foundation v. Harris*, 182 F. Supp. 3d 1049, 1058 (C.D. Cal. 2016) (citing *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009)).

Thus, as this Court has previously recognized, "a colorable First Amendment claim is irreparable injury **sufficient to merit the grant of [preliminary injunctive] relief**." *V.A. v. San Pasqual Valley Unified Sch. Dist.*, 17-CV-02471-BAS-AGS, 2017 WL 6541447, at *7 (S.D. Cal. Dec. 21, 2017), quoting *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) (emphasis added).

Without an injunction preventing Defendants from further enforcing the Orders Plaintiff will suffer irreparable harm in the form of deprivation of fundamental freedoms secured by the First and Fourteenth Amendment to the U.S. Constitution and the California Constitution. Plaintiff's irreparable injuries cannot adequately be compensated by damages or any other remedy available at law. Thus, irreparable injury is clearly shown, sufficient to merit the grant of preliminary injunctive relief.

## C.    The Balance Of Hardships Tips Decidedly In Plaintiff's Favor.

In First Amendment cases, "balancing of the hardships," like irreparable harm, tends to turn on whether the challengers can show that the regulations they attack are substantially overbroad. *Reed*, 523 F.Supp.2d at 1012. "A party who proves that a regulation is substantially overbroad necessarily … has shown that leaving the regulation on the books would substantially chill the exercise of fragile

and constitutionally fundamental rights." *Id.* at 1012. "In sharp contrast, defendants who are temporarily enjoined from enforcing a regulation because it is overbroad often are in a position to adopt, at least on an interim basis, a more narrowly crafted set of provisions that enable the defendants to achieve their legitimate ends without unjustifiably invading First Amendment freedoms." *Id.*

The balance of equities especially favors the Plaintiff where a regulation "imposes criminal sanctions" (*Doe v. Harris*, 772 F.3d at 583) as the County Order in this case does. In cases implicating constitutional rights, "the 'balancing of the hardships' factor also tends to turn on whether the challengers can show that the regulations they attack are substantially overbroad." *Reed*, 523 F. Supp. 2d at 1101. Given Plaintiff's showing of the facially and as-applied invalidity of the vague, overbroad Orders, Plaintiff necessarily has shown that leaving those Orders in place for even a brief period of time "would substantially chill the exercise of fragile and constitutionally fundamental rights," and thereby constitute an intolerable hardship to Plaintiff. *Reed*, 523 F.Supp.2d at 1101.

As mentioned above, Defendants' ban on communal religious services will deprive Plaintiff, and potentially millions of other Californians, of their ability to exercise religious freedom as secured by the First and Fourteenth Amendments and Article 1 of the California Constitution. By contrast, temporarily enjoining Defendants' enforcement of the Orders will not result in hardship to Defendants, who are in a position to adopt, at least on an interim basis, a more narrowly crafted set of equally applied provisions that enable the government to achieve any legitimate ends without unjustifiably invading First and Fourteenth Amendment freedoms. *See id.* In addition, Defendants will suffer no legitimate harm by accommodating a Plaintiff's exercise of fundamental rights in the same manner Defendants are accommodating thousands—and millions—of others engaged in secular activities. The Constitution demands no less.

21

### D.   Injunctive Relief Is In The Public Interest

Just as the elements or irreparable harm and balancing of the hardships are given heightened scrutiny in cases implicating core constitutional rights, "[s]imilarly, the requirement that issuance of a preliminary injunction be in the 'public interest' usually is deemed satisfied when it is clear that core constitutional rights would remain in jeopardy unless the court intervened." *Id*.   "As the Ninth Circuit has consistently recognized, there is a significant public interest in upholding First Amendment principles." *Americans for Prosperity Foundation*, 182 F. Supp. 3d at 1059 (internal citations omitted); see also *Doe v. Harris*, 772 F.3d at 683; *Sammartano*, 303 F.3d at 974.

The public is best served by preserving a foundational tenet of this American democracy: religious liberty. *See Sammartano*, 303 F.3d at 974 ("Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles."). As discussed above, Plaintiff's core constitutional rights to practice religion freely, free speech, due process, and equal protection, will remain in jeopardy so long as Defendants remain free to enforce their Orders. Accordingly, issuance of injunctive relief is proper, and the Court should grant this Application.

## II.   THE COURT SHOULD DISPENSE WITH ANY BOND REQUIREMENT

Rule 65(c) of the Federal Rules of Civil Procedure provides that a TRO or preliminary injunction may be issued "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." F.R.Civ.P. Rule 65(c). However, the Court has discretion as to whether any security is required and, if so, the amount thereof. *See, e.g., Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

22

Plaintiff requests that the Court waive any bond requirement, because enjoining Defendants from unconstitutionally enforcing the orders as to religious activities will not financially affect Defendants, who already categorically exempt specified non-religious activities from compliance. A bond would, however, be burdensome on already burdened Plaintiffs under these circumstances. *See, e.g., Bible Club v. Placentia-Yorba Linda School Dist.*, 573 F. Supp. 2d 1291, fn. 6 (C.D. Cal. 2008) (waiving requirement of student group to post a bond where case involved "the probable violation of [the club's] First Amendment rights" and minimal damages to the District of issuing injunction); citing *Doctor John's, Inc. v. Sioux City*, 305 F. Supp. 2d 1022, 1043-44 (N.D. Iowa 2004) ("requiring a bond to issue before enjoining potentially unconstitutional conduct by a governmental entity simply seems inappropriate, because the rights potentially impinged by the governmental entity's actions are of such gravity that protection of those rights should not be contingent upon an ability to pay.").

## CONCLUSION

Plaintiffs respectfully request that the Court grant Plaintiff's motion for a temporary restraining order, and issue an order to show cause why a preliminary injunction should not be issued, as follows:

1.   Defendants, as well as their agents, employees, and successors in office, shall be restrained and enjoined from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with any prohibition on Plaintiff's engagement in religious services, practices, or activities at which the Center for Disease Control's social distancing guidelines are followed.

2.   Defendants shall show cause, at a time and place to be directed by the Court, why a preliminary injunction should not issue requiring Defendants to act as 1described in above; the temporary restraining order shall remain effective until such time as the Court has ruled on whether a preliminary injunction should issue.

1    Such relief is necessary to prevent Defendants from further violating Plaintiff's

2    constitutional rights, pending trial on the merits of Plaintiff's claims.

3                                    Respectfully submitted,

4

5    DATE: May 1, 2020              FREEDOM X

6

7                        By:    /s/ William J. Becker, Jr.
                                WILLIAM J. BECKER, JR., ESQ. (SBN: 134545)

8                               Bill@FreedomXLaw.com

9                               JEREMIAH D. GRAHAM, ESQ. (SBN: 313206)

10                              jeremiahdgraham@gmail.com

11                              11500 Olympic Blvd., Suite 400

12                              Los Angeles, California 90064
                                Telephone: (310) 636-1018

13                              Facsímile: (310) 765-6328

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pl.'s Mot. For Prelim. Inj.                        Case No.: 3:20-cv-00683-BAS-AHG